Robert A. Scher
Adam G. Pence
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Tel: (212) 338-3575
Fax: (212) 687-2329

Frank E. Pasquesi (of counsel)
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, IL 60654-5313

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CVS Pharmacy, Inc. and Caremark Rx, L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> Press America, Inc., <br><br> Defendant. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiffs CVS Pharmacy, Inc. ("CVS Pharmacy") and Caremark Rx, L.L.C. ("Caremark" and, collectively with CVS Pharmacy, "CVS"), by and through their attorneys, Foley & Lardner, LLP, for their Complaint against Defendant Press America, Inc. ("Press America"), state as follows:

## NATURE OF THE ACTION

1.      This is an action for breach of contract, indemnification, and negligence based on Press America's refusal to honor its clear obligations to indemnify CVS for damages arising out

of Press America's negligent disclosure of private health information ("PHI") under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

2.     In 2011, CVS Pharmacy, on behalf of itself and Caremark, contracted with Press America to provide CVS certain printing and mailing services related to CVS's pharmacy benefits management programs ("PBMs").    These mailing services included distributing correspondence about prescription medications to various patients in the PBMs.

3.     In 2012, Press America negligently disclosed PHI for numerous PBM patients in breach of its contracts with CVS, and, as a result, CVS was forced to pay its PBM client, International Business Machines Corporation ("IBM"), the amount of $1,845,000 because the disclosure of PHI related to certain IBM employees.

4.     CVS repeatedly has demanded reimbursement of this amount, under the specific terms of the applicable contracts and the protections afforded under common law.

5.     To date, Press America has refused to reimburse CVS and has provided no basis for its failure to do so.

6.     CVS, therefore, brings this action to enforce its contractual and common law rights, and for such other and further relief as the Court deems just and proper.

## THE PARTIES

7.     Plaintiff CVS Pharmacy is a company organized and existing under the laws of the state of Rhode Island, with a principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.

8.     Plaintiff Caremark is a limited liability corporation, whose sole member is CVS Pharmacy, and is organized and existing under the laws of Delaware, with a principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.

9.      Upon information and belief, Defendant Press America is a company organized and existing under the laws of the state of Illinois, with a principal place of business at 661 Fargo Avenue, Elk Grove Village, Illinois 60007, and engages in the business of printing and distributing various marketing and compliance communications to corporate clients throughout the United States, including New York.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this matter pursuant to Title 28 of the United States Code § 1322, as complete diversity exists between the parties (for diversity purposes, both CVS Pharmacy and Caremark are citizens of Rhode Island) and the matter in controversy exceeds $75,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Defendant Press America because, among other things, Press America has consented to personal jurisdiction in the state and federal courts of New York, New York by waiving any available jurisdictional defenses for claims arising out of the applicable contracts and has purposefully availed itself of the privilege of conducting activities in the state of New York by conducting business there generally.

12.     New York State has personal jurisdiction over Press America, which is a corporation who, upon information and belief, regularly conducts business in this district, and this district has the most significant contacts.  Therefore, pursuant to 28 U.S.C. § 1391(d), venue is proper in this district.

## STATEMENT OF FACTS

### A.      The Relevant Agreements

13.     On or about October 1, 2011, CVS Pharmacy, "on its own behalf and on behalf of its Subsidiaries and Affiliates including without limitation Caremark Rx, L.L.C." (which were

also collectively defined as "CVS"), and Press America entered into a Master Service Agreement (the "Master Agreement") and entered into a Statement of Work, effective October 1, 2011, whereby Press America agreed to provide to CVS certain printing and mailing services. CVS and Press America entered into another Statement of Work, effective May 1, 2012, with respect to certain printing and mailing services, including services that would be performed for CVS in connection with its work pursuant to a contract with IBM, whereby CVS, through Caremark, became the administrator of IBM's managed care pharmacy program ("the IBM Contract"). True and correct copies of the Master Agreement and the Statements of Work (hereinafter, collectively, the "Press America Contract") are enclosed herewith as Exhibit 1.

14.   CVS Pharmacy, "on behalf of itself and its affiliates, including its pharmacy benefits management and retail divisions," and Press America also entered into a Business Associate Agreement (the "Business Associate Agreement"), effective October 1, 2011, "in order to comply with the HIPAA Rules and other applicable Privacy Laws," whereby Press America agreed not to use or disclose, *inter alia*, any PHI other than as permitted by the Business Associate Agreement and Master Agreement. A true and correct copy of the Business Associate Agreement is enclosed herewith as Exhibit 2.

15.   CVS, through Caremark, entered into the IBM Contract, effective January 1, 2012. Included among the activities CVS performed for IBM pursuant to the IBM Contract was corresponding via U.S. Mail with IBM employees about prescribed medications.

### B.   The Relevant Provisions of the Press America Agreements

16.   Both Press America and CVS were well aware of the inherent risks associated with mailing PHI and other sensitive information to patients. In fact, CVS was particularly concerned about its liability exposure if such materials were mistakenly sent to the wrong

individual. Accordingly, each of CVS's agreements with Press America included provisions whereby Press America agreed to indemnify CVS for certain of its actions, and agreed to obtain significant insurance coverage to cover Press America's potential liability to CVS.

17. In the Master Agreement, Press America (referred to as "Vendor" in the contract) agreed to indemnify CVS for any breach of the contract and for any negligence or other misconduct. Section 8.1 of the Master Agreement provides, in part, the following:

**8.1     Indemnification**

> Vendor agrees (i) to indemnify and hold harmless CVS from and against any claims, liabilities, and damages to the extent same are due to Vendor's negligence, willful misconduct, or breach of this Agreement or Vendor's failure to comply with or abide by any applicable law…

18. The Master Agreement further required Press America to maintain insurance to cover any losses incurred by CVS arising from Press America's inadvertent disclosure of PHI. Section 8.3 of the Master Agreement provides, in part, the following:

**8.3     Professional Liability Insurance**

> In addition to the insurance required under Section 8.2, and prior to its performance under this Agreement, Vendor shall, at its own expense, procure:

> **8.3.1**   Professional Liability/Errors and Omissions Insurance, or such other insurance *as is necessary to ensure coverage for any and all acts, omissions, and errors of Vendor with respect to all Work Product performed and provided under this Agreement.* This insurance should provide limits of not less than $2,000,000 per occurrence. Such insurance should also include coverage for the wrongful disclosure of any third party's proprietary information including, without limitation, trade secrets and; liability for interruption of CVS' or any third party's business including, without limitation, claims for loss of use and loss of profits;

> **8.3.2**   Privacy liability coverage with a limit of not less than USD $15,000,000 per claim. *Such insurance shall include, without limitation, coverage for unauthorized access, denial of service attacks, breach of privacy and the failure to protect and disclosure*

> *of personally identifiable information, payment card information and health information; violation of any federal, state or local law or regulation in connection with the protection of information including fines and penalties to the extent allowed by applicable law; notification and crisis management costs, identity theft monitoring and regulatory defense; disclosure of any third party's proprietary information including, without limitation, trade secrets, and; liability for interruption of CVS's or any third party's business including, without limitation, claims for loss of use and loss of profits…*

*Id.* (emphasis added).

19.     Accordingly, under the Master Agreement, Press America is required to indemnify CVS, among other things, for any liability related to the inadvertent disclosure of PHI for any of CVS's pharmacy plan members, including IBM employees.

20.     The Business Associate Agreement provides similarly. In particular, under the Business Associate Agreement, Press America agreed not to use or disclose, *inter alia*, any PHI other than as permitted by the Agreement and Master Agreement. Section 2.0 of the Business Associate Agreement provides that "Vendor agrees not to use or disclose Private Information other than as permitted or required by this Agreement or as required by law."

21.     "Private Information" is defined in the Business Associate Agreement as follows:

> (1) Protected Health Information ("PHI"), as defined by the HIPAA Rules, created or received on behalf of, or received from Company, (2) Nonpublic Personal Financial Information and, as applicable, Nonpublic Personal Health Information, as defined by the Gramm Leach Bliley Act, and (3) any data or information that (i) relates to an individual and (ii) identifies or there is a reasonable basis to believe it can be used to identify the individual (such as, but not limited to, an individual's name, postal address, email address, telephone number, date of birth, Social Security number, driver's license number, financial account number, or any other unique identifier).

22.     Finally, Section 6.0 of the Business Associate Agreement provides as follows:

> Vendor will indemnify and hold harmless CVS and any of its officers, directors, employees, or agents from and against any claim, cause of

action, liability, damage, cost, or expense, including reasonable attorneys' fees and court or proceeding costs, arising out of or in connection with any breach of the terms of this Agreement, any Breach of Private Information under the control of Vendor or its agents or subcontractors that requires notification under the HIPAA Rules or state law, or any failure to perform its obligations with respect to Private Information by Vendor, it [sic] officers, employees, agents, or any person or entity under Vendor's direction or control.

### C.    The Incident

23.    On or about August 2, 2012, in performance of its services under the Master Agreement and the Business Associate Agreement, Press America negligently disclosed PHI pertaining to members of IBM's managed care pharmacy program, and mailed them to other plan recipients (this included 41 separate disclosures affecting 39 different IBM members).

24.    As a result, those members' PHI, including but not limited to their names and prescribed medications, was disclosed in violation of HIPAA and the IBM Contract.

25.    Press America later conceded to CVS that there was an inadvertent disclosure and conceded that the information contained in the above-referenced materials constituted PHI.

### D.    The IBM Contract

26.    Pursuant to the IBM Contract, CVS, through Caremark, agreed to "comply with the performance standards described in Exhibit D (Performance Standards)" which were "intended to ensure a certain level of service by CVS Caremark."

27.    CVS further agreed that if it "fails to satisfy the performance standards in Exhibit D, CVS Caremark's fees shall be adjusted as described in Exhibit D."

28.    Exhibit D provides descriptions of these standards, including Number 26: Protection of Confidential Participant Information, whereby CVS is required to pay IBM a calculated fee for each privacy breach.

29.     This guarantee provides the following description of a failed performance standard:

> [any] use or disclosure of Confidential Participant Information [defined as *inter alia* "information that contains personally identifiable health information about a Participant"], Protected Health Information or Personal Data (collectively "Personal Information") in the possession or control of CVS Caremark, its employees, agents, independent contractors or Subcontractors that is not provided for or permitted by this Agreement, including Breaches of Unsecured Protected Health Information and certain disclosures that would not qualify as a Breach of Unsecured Protected Health Information but that result in disclosure of Personal Information to an improper or incorrect third party, or that would require notice to the Participant under state or federal law as a data breach ("Protection of Information Failure").

30.     The Performance Guarantee further provides that for the applicable 2012 period, there would be a penalty of 3% of the annual fees at risk *for each Protection of Information Failure*.

**E.     CVS's Related Damages**

31.     Press America's negligence in connection with the 2012 incident resulted in 41 specific privacy breaches involving IBM employees.

32.     CVS's annual fee amount "at risk" for these performance guarantees was $1.5 million, 3% of which was $45,000.

33.     On or about December 31, 2012, in accordance with the IBM Contract and to avoid further penalties related to any delays in curing performance guarantees, CVS was forced to credit IBM the sum of $1,845,000 (41 x $45,000) for the privacy breaches caused by Press America.

34.     Based on the above contracts, Press America is liable to CVS for the sum of $1,845,000.00 due to Press America's negligent disclosure of PHI.

35.     CVS has repeatedly demanded payment of this amount from Press America –
including on February 28, 2014 and November 23, 2015 – but Press America has refused to pay
anything.  True and correct copies of these demand letters are attached hereto as Exhibits 3 and
4, respectively.[1]

36.     In an attempt to facilitate a resolution of this dispute, CVS agreed to enter into a
tolling agreement with Press America on July 28, 2015 (the "Tolling Agreement").   The
Agreement was subsequently extended on October 29, 2015, December 14, 2015, and January 8,
2016.

37.     Under the terms of the January 8, 2016 extension, Press America and CVS
extended the Tolling Agreement to January 9, 2017.

38.     As such, the Tolling Agreement terminated on January 9, 2017.

### AS AND FOR A FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

39.     CVS repeats and re-alleges each and every allegation contained in the preceding
paragraphs in this Complaint, and incorporates them herein by reference.

40.     The Master Agreement and Business Associate Agreement each represent valid,
binding, enforceable contracts between CVS and Press America.

41.     CVS fully performed its obligations under the Master Agreement and Business
Associate Agreement.

42.     Pursuant to the clear and unambiguous terms of the Master Agreement, Press
America is required to indemnify CVS, among other things, for any liability related to any
inadvertent disclosure of PHI.

---

[1] CVS has excluded the exhibits to these letters because they contain sensitive PHI or are largely duplicative of the
other exhibits to this complaint.  Further, the November 23, 2015 letter has been redacted to protect similar
confidential information.

43.     While performing services under both the Master Agreement and Business Associate Agreement, Press America negligently disclosed PHI for CVS's pharmacy plan members, including IBM employees.

44.     Because of Press America's negligent disclosure, CVS was forced to pay IBM $1,845,000.

45.     Press America's failure to indemnify CVS in the amount of $1,845,000 constitutes a material breach of the Master Agreement.

46.     As a result, CVS has been, and continues to be, damaged in an amount not less than $1,845,000, plus interest accrued and continuing to accrue thereon.

## AS AND FOR A SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT)

47.     CVS repeats and re-alleges each and every allegation contained in the preceding paragraphs in this Complaint, and incorporates them herein by reference.

48.     The Master Agreement and Business Associate Agreement each represent valid, binding, enforceable contracts between CVS and Press America.

49.     CVS fully performed its obligations under the Master Agreement and Business Associate Agreement.

50.     Pursuant to the clear and unambiguous terms of the Business Associate Agreement, Press America specifically agreed that it would not use or disclose, *inter alia*, PHI for any of CVS's pharmacy members, including IBM employees.

51.     While performing services under both the Master Agreement and Business Associate Agreement, Press America negligently disclosed PHI for CVS's pharmacy plan members, including IBM employees.

52.     Press America's negligent disclosure of PHI on or around August 2, 2012, therefore, constitutes a material breach of the Business Associate Agreement.

53.     Further, pursuant to the express terms of the Business Associate Agreement, Press America is required to indemnify CVS, among other things, for any liability, damage, cost, or expense, including reasonable attorneys' fees, related to any breach of the Business Associate Agreement or improper disclosure of PHI.

54.     Because of Press America's negligent disclosure, CVS was forced to pay IBM $1,845,000.

55.     Press America's failure to indemnify CVS in the amount of $1,845,000 also constitutes a material breach of the Business Associate Agreement.

56.     As a result, CVS has been, and continues to be, damaged in an amount not less than $1,845,000, plus attorneys' fees and related costs, and interest accrued and continuing to accrue thereon.

## AS AND FOR A THIRD CAUSE OF ACTION
### (INDEMNIFICATION)

57.     CVS repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

58.     The Master Agreement and Business Associate Agreement each represent valid, binding, enforceable contracts between CVS and Press America.

59.     Pursuant to the clear and unambiguous terms of the Master Agreement and the Business Associate Agreement, Press America is required to indemnify CVS, among other things, for any liability related to the inadvertent disclosure of PHI.

60.     CVS fully performed its obligations under the Master Agreement and the Business Associate Agreement.

61.     Press America is required to indemnify CVS in the amount of not less than $1,845,000, as well as reasonable attorneys' fees and any other costs or expenses related to the negligent disclosure of PHI on or around August 2, 2012.

62.     As a result of the foregoing, CVS has been, and continues to be, damaged in an amount not less than $1,845,000, plus attorneys' fees and related costs, and interest accrued and continuing to accrue thereon.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (NEGLIGENCE)

63.     CVS repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

64.     CVS hired Press America to print and mail important, confidential materials about prescription medications to various patients in the CVS PBMs.

65.     Through its retention of Press America, CVS put its trust and confidence in Press America as its vendor and reasonably relied on Press America to fulfill its obligations.

66.     As a vendor of printing and mailing services, Press America owed CVS a duty of reasonable care in a manner consistent with the knowledge and ability possessed by such a vendor.

67.     Press America breached its duty of reasonable care to CVS by, among other things, negligently disclosing PHI pertaining to members of PBMs, including IBM's managed care pharmacy program.

68.     CVS was injured by Press America's negligence because it was required to pay $1,845,000 to IBM as a result of this disclosure.

69.     CVS was also injured by Press America's negligence because it was forced to conduct an exhaustive investigation to determine the members affected by the disclosure and assess the extent of various HIPAA compliance issues.

70.     Press America's negligence was the proximate cause of the foregoing.

71.     As a result of the foregoing, CVS has been, and continues to be, damaged in an amount not less than $1,845,000, plus the costs and expenses associated with CVS's investigation, and interest accrued and continuing to accrue thereon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendant Press America as follows:

A.     Enter judgment against Press America on the First Count alleged herein, and award damages in the amount not less than $1,845,000, plus pre-judgment and post-judgment interest, and related costs and attorneys' fees;

B.     Enter judgment against Press America on the Second Count alleged herein, and award damages in the amount not less than $1,845,000, plus pre-judgment and post-judgment interest, and related costs and attorneys' fees;

C.     Enter judgment against Press America on the Third Count alleged herein, and award damages in the amount not less than $1,845,000, plus pre-judgment and post-judgment interest, and related costs and attorneys' fees;

D.     Enter judgment against Press America on the Fourth Count alleged herein, and award damages in the amount not less than $1,845,000, plus pre-judgment and post-judgment interest, and related costs and attorneys' fees; and

    E.    Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: January 10, 2017                    Respectfully submitted,

                                      FOLEY & LARDNER LLP

                              By: _____

                                        Robert A. Scher, Esq.
                                        Adam Pence, Esq.
                                        FOLEY & LARDNER LLP
                                        90 Park Avenue
                                        New York, New York 10016-1314
                                        Telephone:  (212) 682-7474
                                        Facsimile:  (212) 682-23299
                                        rscher@foley.com
                                        apence@foley.com

                                        Frank E. Pasquesi (of counsel)
                                        FOLEY & LARDNER LLP
                                        321 North Clark Street
                                        Suite 2800
                                        Chicago, IL 60654-5313

                                        *Attorneys for Plaintiffs*